# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| RONALD D. STANSELL, | **Bankruptcy Case No. 08-00716** |
| **Debtor.** | |

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

 Joseph F. Ammirati, Nampa, Idaho, Attorney for Debtor.

 Kathleen A. McCallister, Kuna, Idaho, Chapter 13 Trustee.

# Introduction

The issue presented in this chapter 13[1] case is whether

§ 1325(b)(4)(A)(ii) of the Bankruptcy Code, a provision added by the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

_____

 [1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

"BAPCPA", Pub. L. 109-8, 119 Stat. 23 (2005), requires that a debtor

include the income earned by his deceased spouse during the six months

prior to the filing of the debtor's bankruptcy petition in determining the

"applicable commitment period" for the debtor's plan.  An analysis of this

issue yields an odd result, indeed.[2]

## Facts and Procedural Background

Debtor Ronald Stansell ("Debtor") is a widower.  His former spouse,

Sonda Stansell, passed away on March 8, 2008.  Shortly thereafter, on April

17, 2008, Debtor sought relief under chapter 13 of the Bankruptcy Code.  In

the schedules filed with his petition, Debtor estimated his gross monthly

income at $3,000 and his monthly expenses at $1,911.[3]  *See* Docket No. 1.

As required by Rule 1007(b)(6), Debtor completed and filed an

---

[2]  The parties stipulated to the material facts and submitted briefs.  After a hearing, the Court took the issues under advisement.  Having considered the record, the parties' arguments, and the applicable law, this Memorandum disposes of the issues, and to the extent required by the Rules, constitutes the Court's findings of fact and conclusions of law.  *See* Rules 9014, 7052.

[3]  This expense figure does not include payroll deductions for taxes and social security, which Debtor listed as $814 per month.  Debtor's net monthly income, as computed on Schedule J, is $275.

MEMORANDUM OF DECISION - 2

Official Form 22C (the "Form") to detail his current monthly income, and to calculate the applicable commitment period for his proposed chapter 13 plan. He checked the box at Line 1 indicating that he was "unmarried" and, as instructed, completed only Column A ("Debtor's Income").[4] Using the $3,000 monthly income as a starting point, Debtor calculated that his annualized current monthly income was $36,000. In this calculation, Debtor did not include any portion of his former spouse's earnings. However, during the six months preceding Debtor's bankruptcy filing, it is stipulated that his former spouse received gross income from her employment of $7,662. The median family income for a one person household in Idaho is $37,347. Since Debtor's annual income, as shown in the Form he prepared, was below the median amount, Debtor checked the box indicating the applicable commitment period for his plan was three years. *See* Docket No. 4.

On the same day he filed his petition, schedules, and the Form,

---

[4] For unmarried debtors, the Form instructs in bold font: "**Complete only Column A ("Debtor's Income") for Lines 2-10.**"

MEMORANDUM OF DECISION - 3

Debtor filed his proposed chapter 13 plan.  Docket No. 11.  In it, consistent

with the applicable commitment period indicated in the Form, Debtor

proposed to make 36 monthly payments of $275 to the trustee for

distribution to his creditors.

Chapter 13 trustee Kathleen McCallister ("Trustee") objected to

Debtor's plan, arguing that it suffered from several deficiencies.  Docket

No. 27.  At the confirmation hearing, Trustee conceded that all deficiencies

had been addressed or resolved, with one exception – the required term of

the plan.  Trustee argued that because Debtor's income, when combined

with that of his deceased spouse, exceeded the median income for a single

person in Idaho, the Code required him to propose a 60-month plan.

Debtor argued that he need not count his late-wife's income in

determining his applicable commitment period, and that his 36-month

plan should be confirmed.

It is this contest the Court addresses below.


**Discussion**

MEMORANDUM OF DECISION - 4

A.

Section 1325 of the Bankruptcy Code governs confirmation of a

debtor's chapter 13 plan.  In particular, if the holder of an allowed

unsecured claim or the trustee objects to confirmation, the Court may not

confirm a debtor's proposed plan unless:

> (A) the value of the property to be distributed
> under the plan on account of such [unsecured]
> claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's
> projected disposable income to be received in the
> applicable commitment period beginning on the
> date that the first payment is due under the plan
> will be applied to make payments to unsecured
> creditors under the plan.

11 U.S.C. § 1325(b)(1).

Debtor's proposed plan will not pay unsecured creditors in full.  As

a result, if the plan is to be confirmed, Debtor must show that "all of his

projected disposable income to be received during the applicable

commitment period" will be paid to Trustee.

Trustee does not dispute that Debtor proposes to commit all of his

disposable income to making monthly plan payments.  Instead, her

MEMORANDUM OF DECISION - 5

objection to confirmation targets Debtor's suggestion that a 36-month

commitment period applies in his case.  She argues that, for the plan to be

confirmed, Debtor must propose an additional 24 payments, for a total of

60 months.

B.

Presumably to ensure that debtors who could afford to do so paid

more to their creditors, in BAPCPA, Congress changed the manner in

which the mandatory term of a chapter 13 plan is determined.  Specifically,

the applicable commitment period for a chapter 13 plan is three years (*i.e.,*

36 months), or:

> not less than 5 years, if *the current monthly income
> of the debtor and the debtor's spouse combined,* when
> multiplied by 12, is not less than–
> > (I) in the case of a debtor in a household of
> > 1 person, the median family income of the
> > applicable State for 1 earner[.]

11 U.S.C. § 1325(b)(4)(A)(ii) (emphasis added).  As can be seen from the

highlighted text, to determine the applicable commitment period for a

plan, the Code requires the Court to consider the "current monthly income

MEMORANDUM OF DECISION - 6

of the debtor and the debtor's spouse combined." Trustee and Debtor disagree about the intended meaning of this Code provision, and about the definition of "current monthly income" for these purposes.

Debtor insists that § 1325(b)(4)(A)(ii) should be construed to require that, for a debtor's spouse's income to be included in the calculation of the applicable commitment period, a spouse must actually exist on the date a debtor files the bankruptcy petition. Since in this case Debtor's spouse passed away shortly before he commenced the case, Debtor argues he is not required to combine her income with his own when calculating his current monthly income and the applicable commitment period for his plan. Trustee disagrees, arguing strenuously that the meaning of current monthly income as used in this Code provision is plain, and that the statute expressly requires that the income of Debtor's deceased spouse be included in the applicable commitment period calculation.

Again, the decision whether to include or exclude Debtor's deceased wife's income in calculating Debtor's current monthly income is critical. If her income is not included, Debtor is a below median income debtor, the

MEMORANDUM OF DECISION - 7

applicable commitment period for his plan will be three years, and his

proposed plan can be confirmed.  However, if the spouse's income is

included, it will push Debtor over the median income threshold, the

applicable commitment period increases to five years, and Debtor's plan

must be rejected.

The issue presented by this case is one of first impression in this

District.  However, the Court benefits from the opinions of several other

bankruptcy courts, in both published and unpublished decisions.  *See, e.g.,*

*In re Dugan*, 2008 WL 3558217 (Bankr. D. Kan., Aug. 12, 2008); *In re Borders*,

2008 WL 1925190 (Bankr. S.D. Ala., Apr. 30, 2008); *In re Grubbs*, 2007 WL

4418146 (Bankr. E.D. Va., Dec. 14, 2007); *In re Beasley*, 342 B.R. 280 (Bankr.

C.D. Ill. 2006); *In re Quarterman*, 342 B.R. 647 (Bankr. M.D. Fla. 2006).  Each

of these courts discussed the extent to which the income of a non-filing

spouse must be included in the calculation of the applicable commitment

period.

While there is guidance available in the case law generally

addressing the issue before the Court, each of these decisions involve

MEMORANDUM OF DECISION - 8

married debtors who elected, for whatever reason, to file their respective

bankruptcy petitions alone, and not as a joint filing with their spouses.  The

case at bar is admittedly different, as it involves an unmarried debtor with

no option to choose whether to file individually or jointly.  Unfortunately,

neither the Court nor the parties have discovered any decisions addressing

facts similar to those of Debtor's case.  Still, the analysis and reasoning

employed in these other decisions is instructive.

For example, in one such decision, *Grubbs*, the bankruptcy court

engaged in a particularly thoughtful analysis of the Code provisions at

issue here.  In that case, the debtor was married, but chose to file her

petition individually.  On Form 22C, she reported both her monthly

income, as well as that of her non-filing spouse.  When calculating her

applicable commitment period under Part II of that form, she took a

marital adjustment on Line 13.  The reason for the adjustment was to

exclude that portion of her non-filing spouse's income that was not

regularly contributed towards the expenses of the debtor's household.

Because of this adjustment, the debtor's annualized income was below the

MEMORANDUM OF DECISION - 9

median income level, resulting in a three-year commitment period.  The

trustee objected, contending that the applicable commitment period should

be five years.  According to the trustee, the debtor should not have been

allowed to take a marital adjustment, and that without it, the debtor's

annualized income was above the median income level.

Ultimately, the bankruptcy court overruled the trustee's objection

and confirmed the plan.  *In re Grubbs*, 2007 WL 4418146 at *5.  In doing so,

it reasoned that § 1325(b)(4)(A)(ii) directs a court to consider the "current

monthly income of the debtor and the debtor's spouse."  *Id*. at *2.  It noted

that "current monthly income" is itself a defined term.  In § 101(10A)(A),

the Code defines "current monthly income" as the "average monthly

income from all sources that the debtor receives (or in a joint case the

debtor and the debtor's spouse receive) without regard to whether such

income is taxable" derived in the six month period prior to filing the

bankruptcy petition.  Based upon this definition, the *Grubbs* court observed

that,

a debtor's spouse has no current monthly income

MEMORANDUM OF DECISION - 10

> except in a joint case.  In a single case, current
> monthly income applies solely to that income
> derived by the debtor.  The definition of "current
> monthly income" includes income received by the
> debtor's spouse only when the debtor has filed a
> joint case with his or her spouse.  Because the
> debtor's spouse has no current monthly income,
> the applicable commitment period will be based
> only on the debtor's current monthly income.

*Id*. (citations omitted).  In other words, by virtue of the § 101(10A)

definition, a non-filing spouse, has no "current monthly income" for

purposes of § 1325(b)(4).  This Court agrees.

However, the *Grubbs* court was also quick to qualify its conclusion

by acknowledging that while the non-filing spouse has no current monthly

income, that portion of the non-filing spouse's income that was  regularly

contributed to the household expenses of the debtor during the relevant

six-month time frame is included as part of the debtor's current monthly

income.  *See* § 101(10A)(B)[5].  Thus, a non-filing spouse's income may, or

---

[5] Section 101(10A)(B) provides that current monthly income "includes any
amount paid by any entity other than the debtor (or in a joint case the debtor and
the debtor's spouse), on a regular basis for the household expenses of the debtor
or the debtor's dependants . . . ."

MEMORANDUM OF DECISION - 11

may not, depending upon the facts, be included in calculating the

applicable commitment period. *In re Grubbs,* 2007 WL 4418146 at *3.

The *Grubbs* court emphasized that its interpretation of

§ 1325(b)(4)(A)(ii) was consistent with the instructions included on Form

22C. *Id.* at *4. By instructing married debtors to complete the columns for

themselves as well as their spouses, but then allowing them to take a

deduction for income not regularly contributed to household expenses, the

Form does not run afoul of the statute.

The result in *Grubbs* is also consistent with the discussion of this

issue in the leading treatise on bankruptcy. *See* 8 Collier on Bankruptcy

¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev. 2007). There, the

authors explain, "by definition, income of a nondebtor spouse not paid to

the debtor's household expenses is not current monthly income." *Id.* They

reason that, if such were not true, then even the income of a nondebtor

spouse who contributes nothing to the debtor's household, would be

captured in determining the debtor's current monthly income. *Id.*

Including the nondebtor spouse's income in such circumstances, which

MEMORANDUM OF DECISION - 12

income may, as a practical, be unavailable to the debtor, would make no

policy sense. *Id.*

### C.

In this case, like the non-filing spouse in *Grubbs*, Debtor's deceased

spouse has, by definition,  no current monthly income to "combine" with

Debtor's current monthly income for purposes of § 1325(b)(4)(A)(ii).  But

that conclusion does not save Debtor under the facts as presented here

because it does not resolve whether any portion of Debtor's deceased

spouse's income was regularly contributed to Debtor's household expenses

during the six-months prior to his bankruptcy filing that would be counted

as part of Debtor's own current monthly income.

In the case of debtors who are married at the time their petition is

filed, the Form adequately addresses this point by instructing debtors to

include all of the income of their spouses, and then by later instructing

them to remove (*i.e.*, "adjust") whatever portion of the non-filing spouse's

income that is not regularly contributed to the debtor's household prior to

determining the applicable commitment period.  This approach to

MEMORANDUM OF DECISION - 13

completing the Form is unsatisfactory, however, in the case of unmarried

debtors because the option of taking the marital adjustment does not apply

to them.

      This does not mean that the instructions on the Form are incorrect or

at odds with the Code.  It simply means that a different approach to

completing the Form is required by unmarried debtors.  Instead of

including all income received by the debtor as well as the debtor's non-

filing spouse, and then *deducting* on Line 13 that portion of the income

which is not paid on a regular basis towards debtor's household expenses

as a married debtor would do, an unmarried debtor must list his or her

own income, and then *add to it* any amounts regularly received by the

debtor from another entity for the household expenses of the debtor on

Line 7.

      In this case, the stipulated facts and other evidence does not reveal

how much, if any, of Debtor's former spouse's income was regularly

contributed to household expenses.  Trustee attempts to bridge this gap by

arguing that Debtor and his former spouse must have combined their

MEMORANDUM OF DECISION - 14

income to meet household expenses, because it was not until after his

spouse died and her income was no longer available that Debtor filed his

bankruptcy petition.  However, Trustee's argument is conjecture, not

proof.  Absent an evidentiary foundation to support Trustee's position, the

Court is unwilling to speculate about whether Debtor did, or did not, have

access to his former wife's income,[6] or about the factors that precipitated

the bankruptcy filing.

      In general, a debtor carries the burden of proving that a proposed

plan complies with each of the statutory requirements of confirmation.  *In*

*re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *Itule v. Heath (In re Heath)*, 182 B.R.

557, 560 (9th Cir. B.A.P. 1995).  However, in the context of an objection

under § 1325(b), the objecting party has the initial burden of supporting its

objection with satisfactory evidence before the ultimate burden of

persuasion shifts to the debtor.  *Heath*, 182 B.R. at 560-61.

      Here, it would appear that the brief testimony of Debtor, an

---

    [6] It is certainly plausible that Debtor completed the Form correctly in this
case and Line 7 is left blank because none of his late spouse's income was
regularly contributed to his household expenses.

MEMORANDUM OF DECISION - 15

affidavit, or a few bank statements would have been sufficient to satisfy

Trustee's burden, but alas, no such proof appears in the record.  The

stipulation of facts merely recites how much income Debtor's deceased

spouse received – it does not address what happened to those funds after

receipt.

But the issue of statutory interpretation raised in this case was a

novel one, and the parties could not reasonably have anticipated how the

Court would decide it.  Under these circumstances, rather than overrule

her objection and confirm Debtor's plan, the Court schedule an additional

hearing on confirmation, at which Trustee may present evidence as to how

much, if any, of Debtor's former spouse's income was regularly

contributed to the household expenses of Debtor.  Assuming she is able to

submit enough evidence to show that Debtor's combined income would

exceed the Idaho median, the burden will shift to Debtor to demonstrate

that his plan satisfies the requirements of § 1325(b).

D.

While the Court's conclusions are compelled by the plain meaning of

MEMORANDUM OF DECISION - 16

§§ 101(10A) and 1325(b)(4)(A)(ii), let there be no misunderstanding that the

Court is cognizant of the odd, perhaps bizarre, results these conclusions

yield in a case such as this.

It is indisputable that whatever income may have been contributed

to Debtor's household in the past by his late-wife will not be available to

him to use during the term of the plan to make payments to Trustee.   Since

Debtor's spouse is dead, it would seem the amount of income she received,

or that the couple received, during the six months prior to Debtor's

bankruptcy is irrelevant to Debtor's ability to pay his debts going forward.[7]

In addition, requiring Debtor to extend the term of his plan under these

circumstances means that there may be two more years during which some

unanticipated financial emergency may render him unable to complete his

---

[7] If this were a chapter 7 case, the inclusion of Debtor's deceased wife's
income in calculating Debtor's currently monthly income to determine his
eligibility for relief would result, at worst, in a presumption of abuse.  11 U.S.C.
§ 707(b).  In other words, Debtor would be able to show, and the Court would
have some discretion to agree, that his late wife's income should not prejudice
his right to seek relief under the Bankruptcy Code.  No such discretion is given
the Court under chapter 13, a chapter where debtors hope to pay some or all of
their debts.

MEMORANDUM OF DECISION - 17

plan and receive a discharge.  The Court is simply unable to discern any

legitimate public policy promoted by requiring Debtor to propose a five-

year plan in this case.[8]

   But the wisdom of the current bankruptcy policy is of no moment

here, as the Ninth Circuit has aptly, and firmly instructed the bankruptcy

courts that it is the role of Congress, not the courts to amend statutes.  *See*

*Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 875 (9th Cir. 2008)

("If the changes imposed by BAPCPA arose from poor policy choices that

produced undesirable results, it is up to Congress, not the courts, to amend

the statute." citing *Lamie v. United States Tr. (In re Lamie)*, 540 U.S. 526, 542

(2004)).  Because, under the Code as written, the Court lacks any discretion

in how Debtor's current monthly income is computed, the Court is helpless

---

[8]   Perhaps the last, best hope for debtors such as this one, short of
Congressional reform of the Code, is that described in *Colliers.*  The authors
"[hope] that trustees will not invoke section 1325(b) to demand a five-year plan
based on income that in reality is unavailable to the debtor."  8 Collier on
Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev. 2007).  This
Court also hopes that the District's chapter 13 trustees will carefully consider the
facts and exercise appropriate discretion before significantly burdening a
deserving debtor's ability to obtain relief under the Code.

MEMORANDUM OF DECISION - 18

to intervene on Debtor's behalf, even though the facts of this case, and

equity, seem to favor confirming his plan.

### Conclusion

In summary, the Court concludes that, for purposes of determining

the applicable commitment period for his plan under § 1325(b)(4)(A)(ii),

only the amount of Debtor's deceased wife's income received during the

six months prior to the filing of his bankruptcy case that was actually

contributed to pay Debtor's household expenses is includable in his

current monthly income.  A further confirmation hearing will be scheduled

at which, assuming the issues are not resolved, the parties should be

prepared to present evidence and testimony.

Dated:  October 16, 2008

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 19